### ALCANTARA v. HAIK.
### No. 1319.

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

H. E. Ellis and F. B. Ellis, of Covington, for appellant.

Burns & Burns, A. D. Schwartz, and C. S. Frederick, all of Covington, for appellee.

MOUTON, Judge.

Maple street runs north and south through the town of Abita Springs; Level street, east and west.

Victor Haik, minor son of defendant, while driving a Ford coupé through the intersection of these two streets, collided with a car driven by plaintiff, wife of Ray Alcantara. This collision occurred March 6, 1932, in the afternoon.

Mrs. Alcantara, alleging that she was injured in the collision, brought this suit, claiming damages in the sum of $2,500, with legal interest from judicial demand.

Her demand was rejected. She appeals.

A map made by Mr. Pugh, parish surveyor, the correctness of which is not disputed, shows the locus in quo.

Great Northern Rail Road runs south and southwest of the intersection of these two streets, as appears from the map. Abney's Meat Market is shown thereon on the northwest corner of the intersection, also Carey's Store on the southeast corner, and Mrs. Planches' Shop on the northeast corner. Across the railroad track, and southwest of the intersection, is shown, on the map, a house where Mrs. Hoffman lived at the time of the collision and which has since burned down. The spot on which this house stood is shown by actual measurement made by Pugh, surveyor, to be 223 feet 4 inches from the intersection.

With the exception of a few light posts between the Hoffman house and the intersection which could not have obstructed the vision of any one, there were no obstructions of any kind between those two points, parked autos, railroad trains, or other obstacles, when this accident happened.

The foregoing explanation is made because of its importance in its connection with the testimony of Mrs. Hoffman and that of Frank and Emile, her two sons, wherein they say that they saw the collision from the gallery of their home which stood across the railroad track at that time.

The testimony of the Hoffmans will be more specifically referred to hereinafter in connection with the evidence of other witnesses on the vital issues of this case.

It is shown that plaintiff, Mrs. Alcantara, was driving her auto when the collision occurred, her little girl was sitting on the front seat to her right, and a friend, Mrs. Joe Rauch, on the back seat.

In the Haik car which collided with them, three boys, including the driver, were sitting on the same seat.

Mrs. Alcantara's car was going west on

Level street, the Haik car south on Maple street, both headed for the intersection.

Mr. Lemons testifies that he was near the Barney Carey's Store, which, according to the map, is on the southeast corner of the intersection, when he first saw Mrs. Alcantara's car which was going west towards the intersection. She was then, he says, about 60 feet from that corner, was going slow, and tooted her horn before entering the intersection; that her car was struck by the Haik coupé when nearly across the intersection, "about middle say in the back," and was turned around.

He testifies that he saw the Haik car coming on Maple street, was not coming straight, "waving," making a "little dash or two." He was then, he says, on Barney Carey's banquette, from which, as appears from the map filed in evidence, he could see up Maple street at a good distance beyond the northeast corner of the intersection, where Mrs. Planches' Shop was located.

Mr. Stire, another witness for plaintiff, testifies he was under the shed of Abney's Meat Market, which, as shown by the map, is located on the northwest corner of the intersection. He was then, he testifies, about 20 feet from where the collision occurred. His attention was attracted to the Alcantara car, he says, by the sounding of the horn of plaintiff's car which he heard when the car was about 50 or 60 feet from the intersection. Mrs. Alcantara, he testifies, was then going very slowly; that she then noticed the other car coming when she was about the center of the street, picked up speed to avoid a collision, but without avail, the "Ford struck her."

As he was standing at 20 feet from the point of collision, he was undoubtedly in a position to see her movements, which indicated that she had noticed the on-coming car, and, to avoid the impending accident, increased her speed to avoid it, if possible. Her car, he says, had gone about two-thirds across the intersection when it was struck on the right side. Mrs. Alcantara's car was pushed, he says, about 8 feet from the point of impact; that he examined that car and saw a hole in the right rear tire.

The account given of the occurrence by Mrs. Alcantara is substantially that Mr. Lemons hollered at her from the Carey's corner, she slowed down to say, "Hello"; that when she got to the corner she stopped, blew her horn, looked in both directions, and saw nothing, started to cross the intersection, when a little over the middle saw the boys coming "into me," gave a little gas, and got about two-thirds over the crossing when her car was struck. She tried to avoid the accident, she says, by stepping on the gas. She says further that the Haik car was coming "pretty fast," the boys made no effort to stop, did not swerve their car, came on straight and crashed into her.

She is positive that there was no car in the intersection when she entered it to go across. The fact that the rear right wheel of her car was struck supports her statement that she entered the intersection before the Haik car entered it.

Mrs. Rauch, who was sitting on the back seat of Mrs. Alcantara's car, testifies that before Mrs. Alcantara got to the intersection she stopped, looked both ways, blew her horn, then put her car in second, started to cross, and, when about two-thirds across, was struck by the Haik car. She is certain that Mrs. Alcantara entered the intersection first.

Mrs. Lizzie Hoffman, who then lived across the railroad track 223 feet from the intersection, as hereinabove explained, says she was sitting on her gallery with Frank and Emile, her two sons, when the accident happened. She testifies she saw Mrs. Alcantara's car coming on Level street westward towards Steve Abney's Meat Market, which was towards the intersection, as shown by the map, and the evidence. Her testimony is that Mrs. Alcantara was driving slowly when she saw her coming from that direction, and is positive that Mrs. Alcantara entered the intersection first.

When asked where her car was struck, she answered, and we think very properly, she could not have seen that from her gallery, but says: "It was struck on one of her back wheels."

She says she heard the collision which attracted a crowd and which unquestionably had that effect.

Frank Hoffman, on Mrs. Hoffman's gallery at the time, says he saw Mrs. Alcantara's car coming from the ball park, going westward towards the intersection, moving very slowly; that Mrs. Alcantara blew her horn and almost came to a stop when she reached the intersection and then proceeded across. He says her car was the first one in the intersection and was struck on the west side of Maple street, at the corner of Level and Maple.

Mr. Emile Hoffman, also on the gallery, testifies that Mrs. Alcantara first entered the intersection, blew her horn when she reached

it, came almost to a dead stop before starting to go across. His testimony corroborates that of his mother and brother in every essential particular.

Mr. Kerkel, witness for defendant, testifies that he heard the crash resulting from the collision, looked in the direction of the Hoffman's house, and saw the "two boys on the gallery," but did not see Mrs. Hoffman.

There can be no doubt that Frank and Emile Hoffman were on that gallery at that time, and, as it is only after he had heard the crash that Mr. Kerkel looked towards the gallery at that time, Mrs. Hoffman had probably gone back in her house, which accounts for her absence when Mr. Kerkel saw the boys. It is also shown that the weather was not cold that evening, that it was not raining, and we can find no reason why, on a Sunday evening in March, Mrs. Hoffman and her two sons should not have been on the gallery of her home when the accident happened. Their gallery faced the intersection, and, as there were no obstructions whatsoever between the house and the intersection, it would be illogical to say that these three witnesses could not have seen what occurred when these two autos collided in the intersection.

Mr. Pugh testified that the view was unobstructed between the Hoffman's house and the intersection; that he could see from that house "quite a way" up Level street, also up Maple street to the corner of Slumbrich's Garage, which the map, and likewise the testimony, shows is 100 or more feet from the northeastern corner of Level and Maple streets. He therefore clearly shows by his testimony that Mrs. Hoffman and her boys could have seen all that they said occurred at the intersection when the accident happened and just prior thereto, when Mrs. Alcantara was entering the intersection.

On the other hand, we have the testimony of Messrs. Pilayo, Bill Stone, and Frank Brown, Jr., on which the district judge mainly relies to support the judgment rejecting plaintiff's demand.

Referring in his written opinion to the testimony of these witnesses, the court says: "They testified that the collision occurred near the center of the intersection of these two streets, and that the front bumper of the Haik car was caught in the rear right fender of the Alcantara car, and that the Alcantara car pulled the Haik car across to the other side of Maple Street. One of these witnesses testified that the Alcantara car was being driven at about thirty-five miles per hour and ran out into Maple Street directly in front of the Haik car, and that Mrs. Alcantara did not slow up nor blow the horn when she entered the intersection, but was looking towards the railroad track." These remarks of the court, as we understand the opinion, refer to the testimony given by Frank Brown, Jr.

This witness testifies he was coming from the baseball park driving towards the intersection behind Mrs. Alcantara's car, at a distance of about 50 or 60 feet. He says Mrs. Alcantara did not blow her horn, nor did she stop her car before entering the intersection. In this statement he is contradicted by Mr. Lemons, who was at the time at Carey's corner near the intersection, by Stire who was near Abney's Market 20 feet from where the collision occurred, by the testimony of Mrs. Hoffman and her two sons, by the testimony of Mrs. Alcantara and Mrs. Rauch, her companion in her car.

Mr. Frank Brown, Jr., testifies he was driving a model Ford coach at the time with the windows down. The car Mrs. Alcantara was driving, he testifies, is an inclosed car with windows on the side. Her car, he says, was directly in front of him, and that he was at a distance of about 50 or 60 feet behind it, as above stated. She was in a closed car and he was in a closed car, he testifies. He says, when Mrs. Alcantara entered the intersection, she was looking towards her left, towards the Carey's Store, and in a direction opposite that from which the Haik car was approaching. He then says she never looked in any other way when she got on the corner.

That he could, from a closed car he was driving, see through plaintiff's closed car at the distance he was behind that car, and also could see Mrs. Alcantara was looking in only one direction and to her left side, and until she reached the corner of Carey's Store, is simply unbelievable.

He also testified that the Haik car was in the center of the intersection when plaintiff entered it. In this particular he is contradicted by the Hoffmans, plaintiff, Mrs. Rauch, Lemons, and Stire.

The lower court, as appears from its opinion, relied to a large extent on the testimony of Mr. Frank Brown, Jr., taken in connection with the testimony of Messrs. Bill Stone and Pilayo, in arriving at its conclusions, which were to the effect that they constituted three eyewitnesses to the accident as against the testimony of two, Messrs. Stire and Lemons, for plaintiff.

In so concluding, the court discarded the

evidence of Mrs. Hoffman and her two sons. These last-named witnesses, we find, for the reasons hereinabove given, were in a position to see what had transpired when the collision occurred, and we can find no reason why their testimony should not have been taken into consideration. It is all the other way with the testimony of Mr. Frank Brown, Jr., which should be entirely eliminated from consideration for the reasons also above stated. Eliminating his testimony leaves the testimony of the Hoffmans, Stire, Lemons, and Mrs. Rauch, witnesses for plaintiff, as against the evidence of Messrs. Bill Stone and Pilayo, for defendant. Even if we were to consider the testimony of Mr. Frank Brown, Jr., there would still be six eyewitnesses for plaintiff, as against three for defendant, including Bill Stone and Pilayo. If the issues to be solved depended on the number of witnesses, as seem to have influenced the judgment appealed from, the preponderance of the evidence would be largely in favor of the plaintiff.

The trial judge, in his opinion, seems to have also discarded from consideration the evidence given by Mrs. Alcantara and Mrs. Rauch, eyewitnesses for plaintiff, and the testimony of two of the boys who were in the Haik car at the time of the accident, the other boy not having testified at the trial, due to illness.

The testimony of Mrs. Alcantara, and of her companion in the car, Mrs. Rauch, is in perfect accord in all substantial features with the evidence of Stire, Lemons, and the Hoffmans. There is certainly nothing in their evidence to warrant its elimination from consideration.

The testimony of Victor Haik, driver of the Ford coupé, and the other boy, is to the effect that they entered the intersection first, had proceeded about midway when the Alcantara car suddenly shot in front of their car; that plaintiff swerved to her left to avoid the collision, which resulted in the front bumper of the Haik car catching in the rear right fender of the Alcantara car, which pulled the Haik car to the other side of Maple street, as was found by the district judge, and so expressed in his opinion. This finding of fact was in keeping with what Messrs. Bill Stone and Pilayo had testified to about the occurrence.

To accept this account of the accident, it would have to be accepted as a fact that the Haik car was about the center of the intersection when this hooking of the two cars occurred. It is simply impossible to accept this theory of the case, in the teeth of the large preponderance of the evidence which shows that Mrs. Alcantara entered the intersection first. The catching of the bumper of the Haik car in the rear of the right fender of plaintiff's car, it is not amiss to say, would have been a quite noiseless operation. The proof is that Mrs. Hoffman heard the crash when the collision occurred, also Mr. Kerkel; and that a large crowd soon gathered at the scene, which no doubt was attracted by the noise resulting from the impact. In addition to that, we have the testimony of Mr. Previtte, witness for defendant, who had a garage, he says, situated on Maple street, 75 feet from the curbing. He was in his shop working at the time of the accident, he testifies, and says he heard the crash distinctly and knew that a collision had taken place. As his shop is 75 feet from the curbing on Maple street, he certainly could not have been at a shorter distance from the point where the cars came together. His shop could not have been at the northwestern corner of the intersection as the meat market building is there, nor could it have been on the northeastern corner, as this spot is occupied by Mrs. Planche's Shop. The map does not show, nor is it shown by any testimony in the case, how far this shop of Mr. Previtte is from the point where the impact occurred. Everything indicates, however, that it is at a distance further than 75 feet from where the accident happened, but, even if not, there can be no question that there was a considerable crash, else this busy man in his shop would not have distinctly heard it so clearly that he knew a collision had taken place.

Mr. Privette testifies that he repaired the rear right tire of the Alcantara car and gave the inner tube to one of the Haik boys. The testimony of Mrs. Rauch is that the impact blew the tire out and which finds confirmation in the evidence given by Mr. Privette, who also says that he is positive that the Ford car ran into the rear right tire of the Alcantara car, which was the result of his examination, so he testifies.

We have here referred to physical facts which show clearly that a crash occurred of considerable force, and that there was no hooking of the cars to which these witnesses for defendant have testified. The only reasonable explanation is that the Haik car ran into the Alcantara car, as is shown by the testimony of plaintiff's witnesses to which we have referred.

Victor Haik, the driver of the Haik car, was in his sixteenth year at the time of the accident. That car had been bought for $10. He says he was out for a pleasure ride; Mat-

lock, his companion in the car, puts it in a little stronger language by saying they were out to try out the car, for a good time, a joy ride. His testimony is they had been at the ball game, that they had spent most of their time in pushing the car, which "did run some of the time."

The testimony of Mr. Lemons is that, when Mrs. Alcantara was approaching the intersection, he was at the corner of Carey's Store from where he saw the Haik car coming southward on Maple street; that it was waving, not coming straight, "making a little dash or two." Mr. Lemons was certainly in a position, at that time, to see up Maple street, the direction from which that car was nearing the intersection, and, when giving his testimony, did not know that this car was not very dependable, and which would be a fact to be considered in the decision of this suit; hence, he cannot be charged with fabricating any such evidence in the interest of the plaintiff.

This testimony of Mr. Lemons reveals the true situation, as it shows that this boy driver did not have the control of that car, which he should have had, if really in its condition it was manageable.

Victor Haik says he was traveling at 10 or 15 miles an hour when he came to the intersection. The evidence in the record contradicts this statement and the crash which resulted with the blowing of the tire is confirmatory of that contradiction. The waving movement of his car, dashing one way and the other, as described by Mr. Lemons, shows that he had lost control of his car and supports the testimony of Mrs. Alcantara, that he had lost control of his car, when he crashed into her auto. When the impact took place, she was the closest eyewitness, and her testimony on this subject makes it, taken in connection with the other evidence, quite clear that he had lost control of his car, which was the cause of the collision.

Mr. Louis Stire testifies that, after the accident, the largest boy in the Haik car was somewhat impudent towards Mrs. Rauch; that the driver of that car, which the evidence shows was Victor Haik, reprimanded his companion and told him to quit, as "he was in the wrong." With boyish frankness, in an unguarded moment, this boy said what is reflected by the evidence in this record, that he was wrong or at fault, as the testimony, taken as a whole, is not susceptible of any other rational construction.

Mr. Frank Brown, Sr., father of Mr. Frank Brown, Jr., testified in the case. He says he was about 300 feet from the collision. He heard, he says, a "little tap," it does not seem it was a crash, which the others heard. Strange to say, he was in the vicinity.

Bill Stone and Pilayo, who boarded at his house, were in close proximity to the intersection, both on different corners. Not only this, but his son, Frank Brown, Jr., was behind plaintiff's car seeing things that hardly any mortal could see from a closed car through a closed car. 'The reference to this singular coincidence, it might be said, is based only on suspicious circumstances. "Suspicions, like bats, fly by twilight," as was well said by one of the wisest of the Anglo-Saxon race, and would not be referred to by the court under ordinary circumstances.

Mr. Frank Brown, Sr., testifies that, a few days before the trial of this case, Mr. Haik and Mrs. Haik, with Bill Stone, were at his home. He says Pilayo had gone to bed and was not present, although Bill Stone says Pilayo was there and joined in the conversation wherein this case was discussed.

He testifies, after the wreck, he went to Mrs. Alcantara's home; that she was holding a glass and offered him a highball; that Mrs. Rauch had a Coca-Cola bottle and some whisky. Plaintiff, he says, was sitting on her bed; that two or three days after the wreck she went to a neighbor to use the telephone.

The evidence shows that plaintiff was confined to her bed for ten days after the accident. This is established by the evidence of her physician, Dr. Heintz; of a practical nurse who was attending to plaintiff; also by the testimony of Mrs. Rauch and other witnesses. The testimony of Mr. Frank Brown, Sr., is entirely refuted by the evidence of these witnesses. Mr. Frank Brown, Sr., the record shows, took Mrs. Haik to visit Mrs. Alcantara during her illness; and in various ways, which it is unnecessary to enumerate, disclosed a keen interest in this case and all along for the benefit of defendant.

As the town marshal of Abita Springs, he might have felt it was his duty to make some inquiries in reference to the occurrence. Such a course on his part would not have been objectionable, but he went much further than necessary and was entirely too officious.

The case is clearly made out in favor of plaintiff by a large preponderance of the evidence, the lower court fell into manifest error, which warrants a reversal and the allowance of damages.

■ The claim is for $2,500.

Plaintiff was, no doubt, badly shocked by the collision. Ammonia was given her at the

intersection; she fainted when she reached her home and had to be undressed. Although there were no bruises on her body, she doubtless suffered pains in her chest and back after the wreck. She was ten days in bed and confined to her home for a few days more. She suffered injury to a knuckle of the hand and some stiffness in the adjoining fingers. It appears she was at a dance about 12 days after the accident and participated in one dance.

It appears that she came to Abita Springs for some lung affection about three years before the accident and was about well of that trouble when injured. The proof is that the injury had the effect of reducing her vitality which made her more susceptible to a recurrence of her pulmonary disease. This may occur, as disclosed by the evidence, but there is no certainty that it will.

The testimony, medical and otherwise, does not show that plaintiff is suffering from any permanent injury from the effects of the wreck. The proof entitled her to damages which, we find, she should obtain in the sum of $750, with legal interest from judicial demand, and it will be so decreed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is further ordered, adjudged, and decreed that plaintiff have judgment against defendant in the sum of $750, with legal interest from judicial demand, and that defendant pay all cost of this suit.